IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRANDI KRUK,

    Plaintiff,

v.                                                      CIVIL ACTION NO. 2:23-cv-00641

BOBBY R. HALE,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and referred by standing order to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). [ECF No. 4]. Pending before the undersigned are the pro-se Plaintiff's Application to Proceed Without Prepayment of Fees or Costs and Motion for Emergency Temporary Restraining Order. [ECF Nos. 1; 5]. Also pending is Defendant's Motion to Dismiss Complaint. [ECF No. 7]. For the reasons set forth herein, it is respectfully **RECOMMENDED** that Plaintiff's motion and application be **DENIED**, Defendant's motion be **GRANTED**, and this action be **DISMISSED**.

**I.**

On September 26, 2023, Plaintiff Brandi Kruk ("Plaintiff"), proceeding *pro se,* filed a Complaint for Violation of Civil Rights in this matter, alleging a civil cause of action against Defendant Bobby R. Hale ("Defendant") pursuant to 42 U.S.C. § 1983. [ECF No.

2]. The Complaint alleges that Plaintiff and her ex-spouse, David Lambert Jr. ("Mr. Lambert"), were parties in certain "family court proceedings" before the Family Court of Boone County, West Virginia, related to the parties' divorce, division of property, and determination of their child custody and support obligations (collectively, the "Proceedings"). *Id.* at 3-4. Defendant is the Family-Court Judge of the Tenth Judicial Family-Court Circuit of West Virginia, who presided over the subject Proceedings between 2018 and the present. *See id.* Plaintiff alleges in the Complaint that Defendant "is mad at her and being biased" against her in the Proceedings.[1] *Id.* at 7, 9-13. Plaintiff takes issue with a profusion of Defendant's alleged comments, representations, procedural determinations, evidentiary rulings, findings, orders, decisions, and judgments (collectively, the "judicial determinations"), all made in the course of Defendant's presiding as the assigned Family-Court Judge over the Proceedings. *See generally id.*

Despite setting forth a litany of accusations, the Complaint largely centers on two overarching categories. First, Plaintiff disagrees with Defendant's child-custody determinations, arguing that Defendant wrongfully ignored her petitions and proffers of evidence regarding the "medically-documented abuse Plaintiff's four minor children suffered at the hands of their biological father. *Id.* at 7. In particular, the Complaint alleges that Defendant ignored the issues of abuse raised by Plaintiff, mischaracterized her testimony, and threatened to hold Plaintiff in contempt and place custody of the children

---

[1] Plaintiff speculates that the cause for Defendant's bias could be motivated by, *inter alia*, her judicial complaint filed against Defendant in 2018; her status as a "model of autodidacticism;" (3) Defendant was acting "in cahoots" with a fellow Family-Court Judge who wants "revenge" against Plaintiff for "winning" unrelated lawsuits; "and/or because he simply sucks at doing his job[.]" *Id.*

with Mr. Lambert if she refused to permit Mr. Lambert's visitation with his four minor children. *See id.* at 7-9.

The second overarching category in the Complaint centers on Plaintiff's objections to Defendant's property-distribution and child-support determinations, alleging that these rulings unfairly favored Mr. Lambert and were made without consideration of multiple motions and evidentiary proffers by Plaintiff. The Complaint alleges, for instance, that Defendant barred "any more supporting evidence" of Plaintiff's ownership during a divorce hearing for assets in March 2018. *Id.* According to the Complaint, Defendant further instructed that if Plaintiff "spoke any more," she would be held in contempt. As a result of Defendant's rulings, Plaintiff alleges that she ultimately owed Mr. Lambert "for something what was [Plaintiff's] to begin with." *Id.*

Similarly, the Complaint objects to Defendant's entry of judgment holding Plaintiff financially responsible for certain medical bills totaling $10,130.00. *Id.* at 10-11. Defendant had entered an order that held Mr. Lambert "would be 100% responsible for all medical bills, including dental and orthodontic." *Id.* at 10. Based upon Plaintiff's understanding of this prior order, Plaintiff then sought $4,494.00 in reimbursement from Mr. Lambert, reflecting an amount Plaintiff paid the healthcare provider toward the $10,130.00 balance. *Id.* Plaintiff alleges, however, that when she later appeared for a hearing on the issue on September 19, 2023, Defendant rejected the request for reimbursement and entered a judgment holding Plaintiff financially responsible for the full amount of $10,130.00. *Id.* at 10-11. Plaintiff objects that this judgment was "wrongful," because Defendant "took it upon himself to go against his own [prior] order" by purposefully misconstruing the text therein to classify orthodontic care and yearly eye

exams as "an elective surgery" to be paid by the Plaintiff, as opposed to medical care to be paid by Mr. Lambert. *Id.*

Plaintiff asserts that these judicial determinations by Defendant over the course of the Proceedings constituted a deprivation of her civil and constitutional rights and privileges, causing her to sustain damages in the form of unspecified "mental and emotional" injuries. *Id.* at 3, 5. Plaintiff's Complaint seeks monetary relief only, in the form of $350,000.00 in punitive damages and "$10,130.00 for [Defendant's] wrongful judgment of medical bills and NOT following his own order." *Id.*

## II.

### A.

Where, as here, a pro-se plaintiff seeks to proceed *in forma pauperis*, this Court has an independent statutory duty to "screen" the initial filings, assess the merits of each pleading, and exclude a suit if it lacks an "arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. §§ 1915(e). The Court must dismiss a pleading filed *in forma pauperis* any time it determines that "the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)). The statute also provides for dismissal where the complaint seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii). Furthermore, as part of its initial screening pursuant to 28 U.S.C. § 1915, this Court may determine whether it has subject matter jurisdiction over the claims at issue. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (favoring determination of subject-matter jurisdiction at the outset of litigation for its efficiency).

4

B.

The Federal Rules of Civil Procedure (the "Federal Rules") require a plaintiff's complaint, which is a type of "pleading," to set forth a "short and plain statement of the claim showing that [he or she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this procedural rule is to ensure that a plaintiff's complaint provides the defendant with "fair notice" of the plaintiff's legal claims, and the alleged factual "grounds" for plaintiff's entitlement to relief pursuant to those claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *accord Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Pursuant to Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may challenge the legal sufficiency of a complaint by filing a motion to dismiss, which posits that, even if the facts alleged by the plaintiff are true, the complaint fails to state "a claim upon which relief can be granted" under the applicable law. *Glessner v. Chardan, LLC*, 22-cv-3333, 2023 WL 4351331, at *2 (D. Md. July 5, 2023) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); Fed. R. Civ. P. 12(b)(6)).

To survive a motion to dismiss under this minimal standard, the complaint only needs to set forth enough allegations of fact which, if true, suggest a clearly-identifiable legal claim for relief that "is plausible on its face." *Twombly*, 550 U.S. at 556, 570. For a claim to be "plausible," the complaint does not need to include "detailed factual allegations." *Twombly*, 550 U.S. at 555. Further, a complaint should not be dismissed simply because the actual *proof* of those facts is improbable, because recovery is unlikely, or because the legal theory supporting the claim is not stated perfectly. *Id.*; *accord*

*Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). On the other hand, a complaint may not simply rely on bald accusations, conclusory statements, or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). The U.S. Supreme Court has explained that if the complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is proper. *Twombly*, 550 U.S. at 555. In other words, it is fundamentally insufficient for a complaint to be made up of nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must plead facts which move the claim beyond the realm of mere possibility, and allow the court to draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678.

When reviewing a defendant's motion to dismiss, the Court decides whether the complaint met this standard by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to "reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Additionally, when a plaintiff is proceeding "pro se"—or in other words, without legal counsel—the Court must "liberally construe" the complaint, meaning that it is held to a less stringent standards than if it had been drafted by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, when a potentially-viable complaint is deficient but its shortcomings can be remedied by amendment, the pro-se plaintiff should be given an opportunity to amend the complaint and "particularize" his or her allegations. *See*

*Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *accord Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action."); *Coleman v. Peyton*, 370 F.2d 603, 604 (4th Cir. 1965) (reversing dismissal and explaining that "claims of legal substance should not be forfeited because of a failure to state them with technical precision").

Nevertheless, the requirement of liberal construction does not mean that the Court may ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990) (citing *Iqbal*, 556 U.S. at 685 (2009). Likewise, "a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("[E]ven a solicitous examination of the allegations reveals little on which federal subject matter jurisdiction may be based.") (internal markings omitted). In other words, the mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him or her, or "conjure up questions never squarely presented" to the Court. *Randolph v. Baltimore City*, 14-3176, 2014 WL 5293708, at *1 (D. Md. Oct. 14, 2014), *aff'd sub nom. Randolph v. New Tech*, 588 Fed. App'x 219 (4th Cir. 2014) (citations omitted) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). *See also Weller*, 901 F.2d at 391 (affirming dismissal where the "complaint fail[ed] to allege anything that even remotely suggests a factual basis for the claim," and explaining that

"[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate"). Consequently, the Court may deny leave to amend when "the amendment would be futile," such that "it is clearly insufficient or frivolous on its face" or "if the claim it presents would not survive a motion to dismiss." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

### III.

#### A.

In his Motion to Dismiss, Defendant asserts that this Court lacks jurisdiction over the instant civil action pursuant to the "*Rooker-Feldman* doctrine." [ECF No. 8 at 16]. In the two cases that this doctrine is named after—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—the U.S. Supreme Court ruled that federal district courts such as the U.S. District Court for the Southern District of West Virginia may not exercise jurisdiction over civil cases where the plaintiff essentially seeks to appeal a judgment entered by a state court, such as the Family Court of Boone County, West Virginia. Only the U.S. Supreme Court "possesses the authority to exercise appellate jurisdiction over state-court judgments," as vested by Congress in 28 U.S.C. § 1257(a). *Hulsey v. Cisa*, 947 F.3d 246, 249 (4th Cir. 2020) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005)). In 2005, the Supreme Court clarified that the test for determining whether a federal district court lacks jurisdiction over a civil case pursuant to the *Rooker-Feldman* doctrine has four elements. *See id.* In basic terms, the Supreme Court held that a case may not proceed on a complaint if it is (1) brought by a plaintiff who lost in a state-court proceeding; (2) the plaintiff is

8

complaining of injuries that were caused by the judgments of a state court in the state-court proceeding; (3) the state-court's judgments were "rendered," or entered, by the state court before the plaintiff filed his or her complaint in the federal district court; and (4) the plaintiff's complaint invites the federal district court to review the state-court's judgments and to reject them. *Exxon*, 544 U.S. at 284 (finding that *Rooker-Feldman* is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments"). *See also Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam); *Skinner v. Switzer*, 562 U.S. 521, 532 (2011).

In applying these four elements to a civil action filed in federal district court, the question is not whether a plaintiff "is attempting to litigate claims he either litigated or could have litigated before the state court." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718 (4th Cir. 2006). If "a plaintiff in federal court does not seek review of the state court judgment itself but instead 'presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.'" *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016) (quoting *Skinner*, 562 U.S. at 532). Rather, the question asks in relevant part if the plaintiff, after losing in state court, seeks "redress," or remedy, in the federal district court for "the injury caused by the state-court decision." *Id.* at 719. Finally, the question of this Court's jurisdiction is determined by the allegations contained in the Complaint. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936) (holding "the party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleadings the facts essential to show jurisdiction").

In a recent matter before this Court, for example, a pro-se plaintiff filed a civil complaint in this Court alleging, among other things, that a judge of the Family Court for the Fourteenth Circuit of West Virginia infringed on the plaintiff's constitutional rights during family-court proceedings in which the plaintiff was a party. *Whaling v. West Virginia*, 2:23-cv-568, 2024 WL 962302, at *1 (S.D.W. Va. Mar. 6, 2024). Specifically, the plaintiff in that case alleged in his complaint before this Court that his Sixth-Amendment rights were violated when the family-court judge failed to appoint counsel for the plaintiff before holding him in contempt, and that his Fourteenth-Amendment "right to be a part of [his] child's life" was violated because he had not seen his daughter in over three months. *Id.* After reviewing the complaint, the presiding District Judge in *Whaling* dismissed the case pursuant to the *Rooker-Feldman* doctrine, finding that this Court lacked subject-matter jurisdiction and thus was precluded from adjudicating Plaintiff's claims. *Id.* at *4. In support of this ruling, the Court explained in *Whaling* as follows:

> It is clear from the Complaint that the injuries for which Plaintiff seeks relief were caused by state-court decisions. The contempt order and custody determination were both state-court decisions in which Plaintiff was the losing party. Plaintiff's alleged injuries—violations of his constitutional rights—were caused by those decisions, and those decisions preceded the filing of this case . . . . Finally, part of the relief he seeks for those alleged injuries is full custody of his daughter, which would require this court to overturn the state-court custody determination.

*Id.* at *3.

Just as in *Whaling*, dismissal of Plaintiff's claim against the Defendant is proper in this case pursuant to the *Rooker-Feldman* doctrine. Turning to the first of the four factors outlined by the Supreme Court—whether the action is brought by a plaintiff who lost in a state-court proceeding—this factor is easily satisfied. Plaintiff's Complaint is

expressly based upon the unfavorable judicial determinations entered by Defendant, as the presiding Family-Court Judge in Proceedings before the Family Court of Boone County, West Virginia. The second factor—whether the plaintiff is complaining of injuries that were caused by the judgments of a state court in the state-court proceeding—is likewise clearly satisfied. The Complaint is explicit that Plaintiff is claiming she sustained mental and emotional damages caused by Defendant's alleged "deprivation of civil and constitutional rights & priv[i]le[]ges *in family court proceedings*." [ECF No. 2 at 3, 5]. The third factor— whether the state-court's judgments were "rendered," or entered, by the state court before the plaintiff filed his or her complaint in the federal district court—is equally clear. While Plaintiff does allege that some of Defendant's judicial determinations in the Proceedings— such as the "wrongful judgment of medical bills" on September 19, 2023—were "recent" in relation to her filing of the Complaint in this Court on September 26, 2023, each of the judicial determinations referenced in the Complaint are alleged in the past tense. Lastly, the fourth and final factor—whether the plaintiff's complaint invites the federal district court to review the state-court's judgments and to reject them—also supports dismissal. The Complaint expressly connects the monetary relief Plaintiff seeks in this case to Plaintiff's objections to Defendant's "wrongful" judicial determinations in the Proceedings before the Family Court of Boone County, West Virginia. *See id*. at 5. Granting Plaintiff the relief she seeks in this case would essentially require this Court to overturn the money judgment for payment of medical bills entered by Defendant in the Family Court of Boone County, West Virginia, in the Family-Court Proceedings.

  In summary, Plaintiff's request for relief from Defendant's "wrongful judgment" is exactly like the contempt order and custody determination with which the plaintiff took

issue in the *Whaling* case. Thus, for the same reasons, the undersigned **FINDS** that the Court lacks subject-matter jurisdiction over this case pursuant to the *Rooker-Feldman* doctrine. Accordingly, the undersigned **RECOMMENDS** that this civil action be dismissed without prejudice.

B.

Furthermore, even if the Court were to find that *Rooker-Feldman* is not applicable in this case, the Complaint fails to state a claim upon which relief may be granted. As Defendant argues in his subject motion to dismiss, Defendant is immune from suit in both his official and individual capacities under the circumstances. First, to the extent the Complaint names Defendant in his official capacity, the Eleventh Amendment to the U.S. Constitution generally bars a plaintiff from bringing suit against such state officials for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Because Plaintiff's Complaint seeks monetary relief only—$10,130.00 in damages, and $350,00.00 in punitive damages [*see* ECF No. 2 at 5]—the undersigned **FINDS** that Plaintiff is legally barred from bringing her § 1983 claim against Defendant in his official capacity. While Plaintiff's response to Defendant's Motion to Dismiss generally expressed disagreement with Defendant's argument that sovereign immunity bars Plaintiff from proceeding on her § 1983 claims, she failed to present contrary legal authority to support her position or to otherwise present a non-conclusory basis for finding that an exception applies in this matter. [*See* ECF No. 12 at 1-2].

Next, to the extent the Complaint names Defendant in his individual capacity, the doctrine of absolute judicial immunity generally bars suits for monetary damages against a judicial officer arising from his judicial acts. *Gibson v. Goldston*, 85 F.4th 218, 223 (4th

Cir. 2023). The immunity conferred is "absolute" in that it protects judges not only from ultimate liability in a case, but also serves as a complete bar to suit—even when the officer's judicial acts are alleged to have been done maliciously or corruptly, or were flawed by serious procedural errors. *Id.* (citations omitted). In fact, a judicial officer is protected by this doctrine unless (i) he acts "in the clear absence of all jurisdiction over the subject-matter," or (ii) he engages in "nonjudicial acts" that clearly exceed "the proper judicial role." *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872)). The question of whether a judge's action is "nonjudicial" depends upon "the nature of the act itself, *i.e.*, whether it is a function not normally performed by a judge." *Gibson*, 85 F.4th at 224-225. The "nature" of functions are generally classified by the "basic division of labor distributing the tasks of governance among three branches." *Id*. A judge improperly engages in an extrajudicial function, therefore, if he or she undertakes a function of the executive branch ("the sword") or the legislative branch ("the purse"). *Id.*

In *Gibson*, for instance, an ex-wife filed a petition for contempt in the Family Court of Raleigh County, West Virginia, complaining that her ex-husband Mr. Gibson failed to turn over some of the personal property as required by the property-distribution settlement in the Family Court's divorce decree. *Id.* at 220-221. Instead of addressing this issue by a court order, the Family-Court judge who had presided over the divorce proceedings then personally participated in the search of Mr. Gibson's home, where she seized various personal-property items from Mr. Gibson. *Id.* at 224. Because "[s]earches, seizures, and their supervision are classic law enforcement functions reserved for the executive branch," the Fourth Circuit found that the *Gibson* judge "engaged in acts not normally performed by judges and in so doing forfeited the protection of judicial immunity." *Id.* at 225. *See also Lo-Ji Sales, Inc. v. New York*,

442 U.S. 319, 327 (1979) (holding that a judge who participated in a search was acting as an "adjunct law enforcement officer" rather than a "judicial officer").

Unlike the family-court judge in *Gibson*, who acted outside of her role as a judicial officer by undertaking the enforcement of her own order, the Complaint in this case directly and expressly ties the Defendant's alleged acts—"deprivation of Plaintiff's civil and constitutional rights and privileges"—to the performance of his role as a judicial officer "*in* [the] *family court proceedings.*" [ECF No. 2 at 3 (emphasis added)]. By definition, Defendant was engaged in acts normally performed by judges. Nor does the Complaint set forth non-conclusory allegations of fact from which the Court may infer that Defendant stepped outside of his jurisdictional purview or undertook legislative or executive functions. In the "Additional Pages" section of the Complaint, Plaintiff vaguely challenges the Defendant's judicial determinations in the Proceedings as unconstitutional and unfairly biased against her. *Id.* at 7-13. In support, Plaintiff alleges her personal disagreement with an extensive list of judicial acts, including various procedural matters such as the timeliness of hearings, decisions on motions and petitions for modification; various statements made by Defendant; evidentiary rulings; property-distribution judgments; child-custody determinations; and threatening Plaintiff with contempt sanctions. *See, e.g.*, *id.* at 8 ("Judge Bobby Hale has never, to date, verified income documentation from Mr. Lambert when it comes to child support"); at 9-10 ("Judge Bobby Hale had scheduled a date for hearing from the seconding request for modification" one day before "Brandi received an order denying the [first] petition for modification that she had filed in May 2023, nearly 5 months after filing"); at 10 (Judge Bobby R. Hale "misconstrued" dental bills and orthodontic care as "an elective surgery when it is not," and misrepresented Plaintiff's

14

testimony "by not putting full detail in the order"); and at 11 ("during a hearing concerning assets, Judge Hale refused [Plaintiff] to enter in evidence into the record). Based upon these allegations, Plaintiff concludes in the Complaint that the Defendant "is acting outside of his judicial capacity" by "not acting within the letter of the law" and instead "acting to protect Mr. Lambert's best interest and his own, being biased, based on what [Defendant] the judge thinks instead of what is within the law and what is fact." *Id.* at 10-11, 13. However, Plaintiff's personal disagreement with Defendant's judicial determinations as alleged in the Complaint, and as argued in her response brief, does not give rise to a plausible inference that Defendant acted "in the clear absence of all jurisdiction over the subject-matter," or engaged in "nonjudicial acts" that clearly exceed "the proper judicial role." As set forth *supra*, "absolute" protection of judicial immunity extends to acts committed maliciously or corruptly, or flawed by serious procedural errors. *Id. See also Friend v. Cir. Ct. of McDowell Cty., W. Va.,* 1:22-cv-00301, 2022 WL 19475245 at *3 (S.D. W. Va. Aug. 22, 2022), *adopted,* 2023 WL 2918773 (Apr. 12, 2023) (finding absolute judicial immunity barred plaintiff's claim that his constitutional rights were violated by a judge's rulings in criminal proceedings).

Unlike *Gibson*, where the family-court judge improperly stepped into the role of a law-enforcement officer, the nature of Defendant's acts in this case—making evidentiary determinations, ruling on motions, entering judgments, construing applicable law, entering orders, maintaining the pace of proceedings, and maintaining order in the courtroom—reflect customary duties within the purview of a family-court judge presiding over a family-law matter to which he was assigned. Simply put, the non-conclusory factual allegations in Plaintiff's Complaint do not raise a plausible inference that Defendant acted

"clearly outside" his purview as a judicial officer presiding over the domestic matters to which he was assigned. Thus, even if Defendant's alleged judicial determinations in the Proceedings were biased, factually or legally erroneous, or "wrongful," as Plaintiff alleges, they were not "extrajudicial." *Gibson*, 85 F.4th at 223. Accordingly, the undersigned **FINDS** Defendant is immune from Plaintiff's suit for money damages.

C.

Even if the Court were to assume, *arguendo*, that Defendant is not immune from suit in this case, the undersigned agrees with the Defendant's argument that the connection between Defendant's rulings and his purported bias against Plaintiff rests upon nothing more than speculation and legal conclusions. As the Supreme Court explained at length in *Twombly*, 550 U.S. at 555, a complaint may not simply rely on bald accusations, conclusory statements, or speculation. Plaintiff repeatedly voices her belief, in broad and conclusory terms, that Defendant's judicial determinations were erroneous, in violation of her constitutional rights, and fueled by a retaliatory motive. [See ECF No. 2 at 9-10]. Along with a judicial complaint Plaintiff filed against Defendant in 2018, she speculates that Defendant engaged in the alleged misconduct because he: (i) "just does not want to deal with" the Plaintiff's requests for relief in the Family-Court Proceedings; (ii) wishes to protect the best interest of Plaintiff's ex-husband, Mr. Lambert, out of favoritism; (iii) is acting "based on what [he] the judge thinks . . . is in his best opinion;" (iv) is making a "direct stab at [Plaintiff] for being a model of autodidacticism;" or (v) that Defendant is "in cahoots" with Ronald G. Salmons—a fellow family-court judge of the Tenth Family Circuit Court—"as it is no well hidden secret at the revenge Salmons wants against [Plaintiff] for winning the unrelated cases against him and his clients, without an

attorney representation, in family and circuit court multiple times." See id. at 7-13. However, in summation to her speculation, Plaintiff expressly concedes in the Complaint that she "is not sure exactly why [Defendant] Bobby Hale acts the way he does towards her[.]" *Id.* at 10-11. Fundamentally, Plaintiff's mere speculation in the Complaint falls far short of the plausibility standard under Federal Rule 8(a)(2). Accordingly, the undersigned **FINDS** that dismissal is proper pursuant to Rule 12(b)(6).

D.

Finally, permitting Plaintiff to amend her Complaint in light of her status as a pro-se party is unwarranted, because amendment would be futile. *See Equal Rights Ctr*, 602 F.3d at 603. Plaintiff's brief in response to Defendant's motion does not provide a factual or legal basis to overcome Defendant's clear showing that dismissal is proper. Therein, Plaintiff argues that the Court as well as a jury "needs to review all of the evidence at hand to determine whether or not Civil and Constitutional Rights violations exist and if the allegations set forth in the petition are true." *Id.* at 4. Plaintiff's response misapprehends that, as set forth in Part II.B., *supra*, the undersigned's findings herein are premised upon the assumption that all non-conclusory, non-speculative allegations of fact in the Complaint are true. *Soc'y Without a Name*, 655 F.3d at 346. Taking those allegations of fact as true, the Complaint nonetheless fails to state a claim *upon which relief may be granted*. Finally, Plaintiff also argued in response to the Defendant's motion that her Complaint is not exhaustive of "the numerous occurrences" of Defendant's violation of her civil and constitutional rights. [ECF No. 12 at 1 ¶ 1, 2 ¶ 12]. It is plain from the additional allegations and argument set forth in Plaintiff's response, however, that these "occurrences" suffer from the same deficiencies discussed *supra*. Accordingly, the

undersigned **FINDS** that, despite Plaintiff's pro-se status, dismissal is warranted because amendment would be futile under the circumstances.[2]

## IV.

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Application to Proceed Without Prepayment of Fees or Costs [ECF No. 1] be **DENIED** pursuant to 28 U.S.C. § 1915(e); Plaintiff's Motion for Emergency Temporary Restraining Order [ECF No. 5] be **DENIED** as moot; Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 7] be **GRANTED**, and this civil action be **DISMISSED**—either without prejudice for lack of subject-matter jurisdiction, pursuant to *Rooker-Feldman* and Federal Rule 12(h), or—alternatively—with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and Federal Rule 12(b)(6).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension

---

[2] In his Motion to Dismiss, Defendant sets forth a number of additional arguments in support of dismissal, including arguments based upon claim and issue preclusion, full-faith and credit, the statute of limitations, and qualified immunity. In light of the extensive discussion, *supra*, as well as the interests of justice, the Court's inherent authority to maintain its docket in an orderly, efficient manner, to protect its limited resources, and to secure the just, speedy, and inexpensive determination of every action and proceeding, the undersigned **FINDS** that consideration of Defendant's additional bases for dismissal is unwarranted under the circumstances.

of this time period may be granted by the presiding District Judge for good cause shown. A copy of any objections shall be provided to Judge Copenhaver and to each opposing party, except that, if any opposing party is represented by counsel, that party's copy should be provided to his or her counsel.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy to the District Judge, counsel of record, and any unrepresented party.

ENTERED:　July 16, 2024

Dwane L. Tinsley
United States Magistrate Judge